[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13450
Non-Argument Calendar

_____

D.C. Docket No. 3:08-cv-00966-MMH-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUDITH BARNES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 31, 2012)

Before WILSON, ANDERSON and COX, Circuit Judges.

PER CURIAM:

One day in June 2000, Judith Barnes received a call taxpayers dread.  On the

other end of the line was a man from the local Internal Revenue Service office, and

he told her that she owed nearly $600,000 in taxes. After Barnes tried without success to challenge her liability for the tax assessment, the United States brought suit in 2008 to reduce the assessment to judgment. The Government moved for summary judgment, and the district court granted the motion and permitted the Government to enforce tax liens on two of Barnes's properties to satisfy the outstanding tax liability. Barnes now appeals the grant of summary judgment. We affirm in part, vacate in part, and remand.

## I.

Judith Barnes and her ex-husband, Nathan Genrich, were married between 1971 and 1998. Genrich, a certified public accountant, routinely prepared joint tax returns for the couple, and Barnes, lacking sophisticated tax knowledge, routinely signed them without "any talk of how [they were] going to be prepared." (R.1-30, Ex. 7 at 10.) The two experienced marital difficulties, and for a large part of 1997, Barnes lived in Florida and Genrich remained in Wisconsin, where the couple had lived together. Barnes and Genrich then divorced in May 1998.

In October 1998, Genrich submitted a joint tax return for the 1997 tax year. The return reported $3,302,760 in taxable income, much of which consisted of Barnes's 1997 income from a property sale. Both parties' signatures appear on the return, though Barnes contends (and the Government does not dispute) that she did not sign her name. Barnes did not submit a separate return for her 1997 income.

2

The Internal Revenue Service assessed a liability of more than $600,000. Neither Genrich nor Barnes made payments, and  Barnes only learned of the liability in June 2000.  Between November that year and June 2008, Barnes launched two unsuccessful efforts to avoid this liability, first before the Agency and second in U.S. Tax Court.  *See Barnes v. Comm'r*, 130 T.C. 248, 249–51 (2008).  Shortly after the Tax Court denied her relief, the Government filed suit against Genrich and Barnes to reduce the assessments to judgment and foreclose tax liens it claimed had attached to two of Barnes's properties in Palm Coast, Florida, one on Riviera Place and one on Anastasia Court.  As of December 31, 2011, the amount due in unpaid taxes, interest, and penalties totaled $1,671,212.76. (R.2-51-2 at 1.)

The Government moved for summary judgment seeking (1) to establish the assessment's validity and Barnes's liability for it and (2) to establish the validity of the tax liens on both of the Palm Coast properties and then enforce the liens.  The district court concluded that the assessment was valid and that Barnes was liable for the unpaid taxes, and it granted summary judgment to the Government.  It also found the federal tax liens valid on both of Barnes's properties and ordered the Government to file a proposed judgment, order of foreclosure, and order of sale. Judgment was entered in favor of the Government on June 5, 2012, (R.2-70,) and an Order of Sale was filed on June 8, 2012 (R.2-72).

3

## II.

We review a district court's grant of summary judgment de novo. *Kernal Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). In moving for summary judgment, the movant must do more than file a motion; the moving party instead has "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" as to the issues. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)) (internal quotation marks omitted). In determining whether the movant has met its burden, we "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion," and "[a]ll reasonable doubts about the facts should be resolved in favor of the non-movant." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999) (citations omitted) (quoting *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1368–69 (11th Cir. 1982)).

## III.

Barnes challenges (a) the district court's finding that she was jointly and severally liable for the 1997 joint return and (b) the court's finding that a valid federal tax lien attached to the Anastasia property.

4

*A. Liability for the Joint Return*

A joint tax return gives rise to joint and several liability for the resulting tax assessment. I.R.C. § 6013(d)(3). Typically, both parties must sign the return. 26 C.F.R. § 1.6013-1(a)(2). If only one party signs, the party seeking to impute liability to the nonsignor must show that the nonsignor intended a joint return. *See Olpin v. Comm'r*, 270 F.3d 1297, 1301 (10th Cir. 2001). The parties' intent concerning a joint return is a question of fact. *Gaynes v. United States*, 454 F.2d 1142, 1143 n.3 (5th Cir. 1972).

The district court found that Barnes intended that the joint return serve as her tax return for 1997 because she had a history of relying on Genrich, an accountant, to prepare joint returns (and handle most financial matters) for the couple during their marriage, she believed he would continue the pattern in 1997, she never objected to the joint return or filed her own return for 1997, and the return included her 1997 income. (R.1-49 at 14–16 (using factors established by *Estate of Campbell v. Comm'r*, 56 T.C. 1, 12–14 (1971), to infer intent).)

After carefully reviewing Barnes's arguments that a genuine dispute of material fact existed as to her intent, we reject her arguments for the reasons set forth in the district court's order.

5

*B. Validity of Federal Tax Lien on the Anastasia Property*

A federal tax lien attaches to "all property and rights to property, whether real or personal, belonging to" a party that is liable to pay any tax and refuses to do so upon demand.  I.R.C. § 6321.  The lien attaches to property both owned by the liable party at the time the liability arises and acquired by the liable party thereafter.  *Id.* § 6322; *accord United States ex rel. Internal Revenue Serv. v. McDermott*, 507 U.S. 447, 448, 113 S. Ct. 1526, 1527 (1993).

In a suit to enforce a tax lien, the Government must first establish that "the taxpayer had 'property' within the meaning of the federal tax lien statute." *Randall v. H. Nakashima & Co., Ltd.*, 542 F.2d 270, 272 (5th Cir. 1976).  While "state law controls in determining the nature of the legal interest [that] the taxpayer had in the property" to which a lien purportedly attached, *Aquilino v. United States*, 363 U.S. 509, 513, 80 S. Ct. 1277, 1280 (1960) (quoting *Morgan v. Comm'r*, 309 U.S. 78, 82, 60 S. Ct. 424, 426 (1940)), federal law "determine[s] whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property'" under § 6321, *Drye v. United States*, 528 U.S. 49, 58, 120 S. Ct. 474, 481 (1999).

Here, the district court granted summary judgment to the Government on the issue of whether a valid tax lien had attached to the Anastasia property because no

6

"genuine issue remain[ed] for trial" regarding whether she owned the property within the meaning of § 6321. (R.1-49 at 19–20.) This conclusion was error.[1]

The pleadings provide us the sum total of the undisputed facts about the ownership of the Anastasia property.[2] Barnes's mother conveyed the Anastasia property to the Eleanor S. Barnes Trust in 2001. (R.1-1 ¶ 16; R.1-8 ¶ 16.) Judith Barnes has served as trustee of the Trust since her mother died in 2007. (R.1-1 ¶ 18; R.1-8 ¶ 18.) The deed conveying the property to the Trust named no beneficiaries. (R.1-1 ¶ 17; R.1-8 ¶ 17.) The summary judgment record included no other documents describing the Trust, nor did it contain the deed.

---

[1] The district court initially found that because Barnes failed to address the issue in her opposition to summary judgment, she had "presented no argument or facts . . . to dispute the validity of the tax lien or [the Government's] right to foreclose that lien," entitling the Government to summary judgment. (R.1-49 at 19–20.) This statement of law assumes, however, that the Government met its burden in moving for summary judgment to establish that no genuine dispute of material fact exists. The Government did not do so. It offered no evidence that Barnes owned the Anastasia property, and Barnes did not admit that she owned it in the summary judgment record. A genuine issue of material fact thus remained, and Barnes had no need to oppose the motion on that basis. *See Clemons*, 684 F.2d at 1369 ("[T]he party opposing a motion for summary judgment need not respond to it with . . . evidence unless and until the movant has properly supported the motion . . . .").

[2] The portion of Barnes's Answer to the Complaint regarding her interest in the Anastasia property is carefully worded. The Government alleges that when Barnes became trustee to the Trust, "the rights to all property in the trust, including the Anastasia property, vested in" her. (R.1-1 ¶ 18.) Barnes replied that she "became the trustee of the Eleanor S. Barnes trust . . . and became subject to all rights, duties, and responsibilities under the trusts subject to all applicable Florida statutes and controlling case law." (R.1-8 ¶ 18.) Barnes's statement falls short of the unambiguous denial of the Government's allegation required by the Federal Rules of Civil Procedure, but neither party argues that Barnes admitted to owning the Anastasia property outright, and the district court did not consider the fact admitted. Even if we would construe it as admitted that "the rights" to the Anastasia property "vested in" Barnes, however, that allegation does not indicate whether Barnes held legal title as a trustee or full title as an owner in fee simple—the Government does not indicate what "rights" "vested" in her. We conclude that the allegation fails to allege the nature of Barnes's interest in the Anastasia property.

Based on these facts, the district court determined that Florida statutory and common law operated to give Barnes both legal and equitable title to the Anastasia property. (R.1-49 at 23–27.) The district court reached this conclusion, however, with a boost from the erroneous finding that the Trust had no beneficiaries. (*Id.* at 25.) The summary judgment record indicates only that the deed transferring the Anastasia property to the Trust named no beneficiaries. Nothing in the record establishes that the Trust has no beneficiaries. The record thus fails to establish the nature of Barnes's interest in the Anastasia property under Florida law. Without this determination, the district court could not determine whether Barnes held title to the property within the meaning of § 6013. We cannot affirm its conclusion that a valid tax lien attached to the Anastasia property, and we therefore vacate the grant of summary judgment as to this issue.[3]

## IV.

We affirm the district court's grant of summary judgment as to Barnes's liability for the joint return. We vacate the district court's grant of summary judgment for the Government on the issue of whether a valid federal tax lien

---

[3] Separately, Barnes contends that, even if the tax lien validly attached to the Anastasia property, the district court erred by failing to exercise its discretion under I.R.C. § 7403(c) to consider equitable considerations outlined in *United States v. Rodgers*, 461 U.S. 677, 103 S. Ct. 2132 (1983). (Appellant's Br. at 24–25.) Barnes did not raise this argument before the district court and thus forfeited it. *See Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011) ("It is well settled that issues not raised in the district court in the first instance are forfeited." (citing *F.D.I.C. v. Verex Assurance, Inc.*, 3 F.3d 391, 395 (11th Cir. 1993))).

attached to the Anastasia property.  We also vacate the orders of foreclosure and sale of that property.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.